**EVERETT JACK, OSB #89268**
everettjack@dwt.com
**MATTHEW D. LARSON, OSB # 03368**
mattlarson@dwt.com
**DAVIS WRIGHT TREMAINE LLP**
1300 S.W. Fifth Avenue, Suite 2300
Portland, Oregon 97201
Telephone: (503) 241-2300
Facsimile: (503) 778-5299



Attorneys for Plaintiff Vestas American Wind Technology, Inc.

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

AT PORTLAND

| | |
|---|---|
| VESTAS AMERICAN WIND TECHNOLOGY, INC., a California corporation,<br><br>PLAINTIFF,<br><br>v.<br><br>WILHELM TRUCKING & RIGGING CO., an assumed business name of WILHELM TRUCKING CO., an Oregon corporation, GRESHAM TRANSFER, INC, an Oregon corporation; PAN WESTERN CORP., a Nevada corporation, and EMMERT INTERNATIONAL, an assumed business name of EMMERT INDUSTRIAL CORP., an Oregon corporation,<br><br>DEFENDANTS. | CV'06 1429 MO<br>Case No. _____<br><br>**COMPLAINT**<br><br>(Carmack Amendment; Breach of Contract; Negligence; Declaratory Judgment)<br><br>**JURY TRIAL DEMANDED** |

For its Complaint, plaintiff Vestas American Wind Technology, Inc. ("Vestas") alleges:

Page 1 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

PDX 1434784v1 60784-56

## PARTIES

1. Vestas is a California corporation with its principal place of business in Portland, Oregon. Vestas sells and installs windmills which are used as a source for the production of electric power.

2. Defendant Wilhelm Trucking and Rigging Company, an assumed business name of Wilhelm Trucking Company ("Wilhelm"), is an Oregon corporation with its principal place of business in Portland, Oregon. Wilhelm was and is a commercial trucking company that engages in the interstate hauling of goods over the roadway.

3. Defendant Gresham Transfer, Inc. ("Gresham") is an Oregon corporation with its principal place of business in Sandy, Oregon. Gresham was and is a commercial trucking company engaged in the interstate hauling of goods over the roadway.

4. Defendant Pan Western Corporation ("Pan Western") is a Nevada Corporation with its principal place of business in Las Vegas, Nevada. Pan Western was and is a commercial trucking company that engages in the interstate hauling of goods over the roadway.

5. Defendant Emmert International, an assumed business name of Emmert Industrial Corp. ("Emmert") is an Oregon corporation with its principal place of business in Clackamas, Oregon.

## JURISDICTION AND VENUE

6. This case involves a federal question under the Carmack Amendment to the Interstate Commerce Act (49 U.S.C. §14706, et. seq.) and this Court has jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367.

7. Venue in the District of Oregon, Portland division is proper under 28 U.S.C. § 1391(b).

## COMMON ALLEGATIONS

8. On or about August 3, 2005, Vestas and Wilhelm entered into a Transportation Pricing Agreement (the "Agreement") under which Wilhelm agreed to transport a

Page 2 - COMPLAINT

DAVIS WRIGHT TREMAINE LLP
1300 S.W. Fifth Avenue · Suite 2300
Portland, Oregon 97201 · (503) 241-2300

PDX 1434784v1 60784-56

wind turbine generator equipment of Vestas, including a component called a "Nacelle," from Vancouver, Washington to Dayton, Washington. The shipment of Vestas' equipment originated in Denmark and was dropped at the Port of Vancouver, at which time Wilhelm was to pick up and deliver the Nacelle.

      9.    The Agreement includes the following provisions:

"1.3    Securing of each [wind turbine generator] Component to [Wilhelm's] trailer at the Loading Site and unsecuring it at the Delivery Site shall be performed by [Wilhelm] in compliance with the Department of Transportation mandated procedures.

. . . .

2.2    [Wilhelm] represents and warrants that it has the capability to perform all of its obligations under this Agreement and further represents and warrants that it will have sufficient Vehicles and Equipment available to perform its obligations under this Agreement in a timely manner.

. . . .

5.1    [Wilhelm] shall be solely responsible for the proper and safe securing of each [wind turbine generator] Component to [Wilhelm's] trailer. . . .

. . . .

10.    [Wilhelm] shall be responsible for the efficient routing of each shipment and the suitability of the selected highways for the safe transportation of each [wind turbine generator] Component, including but not limited to all clearances.

. . . .

13.    [Wilhelm] warrants and represents that all Vehicles and Equipment furnished under this Agreement are in sound and roadworthy condition and suitable for the safe securing and transport of the [wind turbine generator] Components and that they shall remain so from arrival at the Loading Site until departure from the Delivery Site.

. . . .

15.3    [Wilhelm] shall be responsible for loss of or damage to each [wind turbine generator] Component, released to a value of $250,000 per single shipment, . . .

. . . .

19.    [Wilhelm] can subcontract the performance of any of its obligations under this Agreement. [Wilhelm] will disclose all partners to Vesta-American. In any

event [Wilhelm] shall remain responsible for the performance of all of its obligations under this Agreement notwithstanding any subcontract.

. . . .

20.   [Wilhelm] shall not assign or transfer this Agreement or any of its rights or obligations hereunder to any person or entity. . . .

. . . .

28.   In any arbitration or litigation to enforce the provisions of this Agreement, the prevailing party in such action shall be entitled to the recovery of its reasonable attorneys' fees and expenses, fees of the arbitrator, costs and expenses such as expert witness fees, as fixed by the arbitrator or court without necessity of noticed motion."

10.   Wilhelm subcontracted the shipping of Vestas' equipment to Gresham who subcontracted the shipping to Pan Western.

11.   On or about August 18, 2006, Pan Western picked-up the Vestas' equipment, including the Nacelle, in Vancouver, Washington and issued a Straight Bill of Lading for the transport.

12.   On or about August 24, 2006, the Pan Western tractor and trailer transporting the Nacelle was involved in a single vehicle accident in a tunnel from southbound Interstate 205 to eastbound Interstate 84 in Portland, Oregon. In the accident, the Pan Western trailer tipped and the Nacelle fell off the trailer and onto the highway sustaining significant and severe damage.

13.   An investigation determined, among other things, that trailer used by Pan Western in transportation of the Nacelle was not adequate to provide the necessary stability for the load.

14.   On or after August 24, 2006, without instruction from Vestas, Pan Western called Emmert to the accident scene to pick up the Nacelle and transfer it to a safe location. Emmert picked up the Nacelle and moved it to a Emmert storage yard.

15. Emmert invoiced Pan Western for the services provided in picking up the Nacelle and storing it at their storage facility. Emmert claims that Pan Western owes it an amount in excess of $200,000 for picking up the Nacelle at the accident location, and another $3,000 per day for storage of the Nacelle at the storage facility. Emmert asserts that it has a lien on the Nacelle and refuses to release it to Vestas without payment of the storage and pick-up charges.

## FIRST CLAIM FOR RELIEF
### (Carmack Amendment; 49 U.S.C. §14706)
### (Against Defendants Wilhelm, Gresham and Pan Western)

16. Vestas realleges paragraphs 1 through 15, above, and incorporates such paragraphs herein by this reference.

17. Wilhelm, Gresham, and Pan Western's participation in interstate shipments are subject to 49 U.S.C. § 14706, Wilhelm and Gresham as a freight forwarders and Pan Western as a motor carrier.

18. At the time Vestas delivered the Nacelle to Pan Western for transport, the Nacelle was in good working order and was not damaged.

19. The Nacelle was damaged solely as a result of the Pan Western tractor-trailer accident on or about August 24, 2500, sustaining damages in an amount to be proven at trial, but in no event less than $800,000. The damage to the Nacelle was not caused by an act of God, a public enemy, an act of Vestas, public authority, or an inherent vice or nature of the Nacelle.

20. Vestas has also suffered incidental and consequential damages in an amount to be determined at trial, for amounts including but not limited to, the loss of use of the Nacelle, additional shipping and storage costs, and testing of the Nacelle all in amounts to be proven at trial.

21. Pursuant to paragraph 28 of the Agreement, Vestas is entitled to recover its reasonable attorney fees and costs from Wilhelm.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract)

### (Against Defendant Wilhelm)

22. Vestas realleges paragraphs 1 through 21, above, and incorporates such paragraphs herein by this reference.

23. Wilhelm breached the Agreement with Vestas in the following particulars:

   a. By failing to deliver the Nacelle without damage and by damaging the Nacelle;

   b. By failing to use adequate equipment to haul the Nacelle;

   c. By failing to select and use an adequate and safe route for the transportation of Vestas' equipment;

   d. By failing to properly secure the Nacelle to the trailer.

24. Pursuant to paragraph 19 of the Agreement, Wilhelm remains liable under the Agreement despite subcontracting the delivery to other carriers, including Pan Western.

25. Vestas has satisfied all conditions precedent to enforcement of the Agreement against Wilhelm.

26. As a result of Wilhelm's breach of the Agreement, Vestas has been damaged in an amount to be proven at trial, but not less than $800,000.

27. Pursuant to paragraph 28 of the Agreement, Vestas is entitled to recover its reasonable attorney fees and costs from Wilhelm.

## THIRD CLAIM FOR RELIEF

### (Negligence)

### (Against Defendants Wilhelm, Gresham and Pan Western)

28. Vestas realleges paragraphs 1 through 27, above, and incorporates such paragraphs herein by this reference.

29. Wilhelm and Gresham were negligent in the following respects which caused the damages to Vestas as alleged herein:

   a. By failing to deliver the Nacelle without damage and damaging the Nacelle;

   b. By failing to use adequate equipment to haul the Nacelle;

   c. By failing to select and use an adequate and safe route for the transportation of Vestas' equipment;

   d. By failing to assure that the subcontractor it retained to haul the Nacelle was using proper and appropriate equipment to do so;

   e. By failing to properly secure the Nacelle to the trailer.

30. Pan Western was negligent in the following respects which caused the damages to Vestas as alleged herein:

   a. By failing to properly secure the Nacelle to the trailer upon which the Nacelle was being transported;

   b. By exceeding the safe rate of speed to assure the Nacelle would not become unstable and fall from the trailer upon which it was being transported;

   c. By failing to use the proper equipment to transport the Nacelle.

31. As a result of the negligence of Wilhelm, Gresham and Pan Western as alleged hereinabove, Vestas has been damaged in an amount to be proven at trial but not less than $800,000.

Page 7 - COMPLAINT

32. Pursuant to paragraph 28 of the Agreement, Vestas is entitled to recover its reasonable attorney fees and costs from Wilhelm.

## FOURTH CLAIM FOR RELIEF

### (Declaratory Judgment)

### (Against All Defendants)

33. Vestas realleges paragraphs 1 through 15, above, and incorporates such paragraphs herein by this reference.

34. Emmert asserts that it has a lien on the Nacelle and refuses to release the Nacelle to Vestas without payment of the charges to Pan Western for pick-up and storage of the Nacelle.

35. Pan Western engaged the services of Emmert to pick-up and provide storage for the Nacelle, agreed to pay for the services of Emmert, and was invoiced by Emmert for these services. Pan Western has, however, refused to pay Emmert.

35. Under the Carmack Amendment (49 U.S.C. § 14706), Wilhelm, Gresham and Pan Western are liable for all incidental and consequential costs associated with transporting the Nacelle, including all costs for pick-up and storage of the Nacelle by Emmert after the accident in which the Nacelle was damaged.

36. Pan Western asserts that the lien on the Nacelle claimed by Emmert is invalid and that Emmert is improperly holding the equipment.

37. A justicable controversy exists between the parties with respect to the validity of the lien claimed by Emmert, the liability for the charges claimed by Emmert, and Vestas' right to take the Nacelle from Emmert's storage facility.

38. Vestas seeks a declaratory judgment that it is entitled to take possession of the Nacelle and remove it from the Emmert storage facility, and that defendants Pan Western, Gresham and Wilhelm are liable for any charges owing to Emmert.

WHEREFORE, Vestas prays for judgment as follows:

1. On its First Claim for Relief for a Judgment against Wilhelm, Gresham and Pan Western for an amount to be proven at trial, but not less than $800,000;

2. On its Second Claim for Relief for a Judgment against Wilhelm for an amount to be proven at trial, but not less than $800,000;

3. On its Third Claim for Relief for a Judgment against Wilhelm, Gresham and Pan Western for an amount to be proven at trial, but not less than $800,000;

4. On its Fourth Claim for Relief for a Declaratory Judgment that Vestas is entitled to take possession of the Nacelle and remove it from the Emmert storage facility, and that defendants Pan Western, Gresham and Wilhelm are liable for any charges owing to Emmert.

5. Against Wilhelm for attorney fees, costs and disbursements incurred herein;

6. Against Pan Western and Gresham for costs and disbursements incurred herein; and

7. For such other and further relief as the Court may award.

DATED this 9th day of October, 2006.

DAVIS WRIGHT TREMAINE LLP

By _____
Everett W. Jack, OSB #89268
Matthew D. Larson, OSB #03368
Telephone: (503) 241-2300
Facsimile: (503-778-5299
everettjack@dwt.com
Attorneys for Plaintiff

### JURY TRIAL DEMAND

Vestas demands a trial by jury.

By _____
Everett W. Jack, OSB #89268

Page 9 - COMPLAINT